Ex parte Manhattan Co.

----

## Ex parte The Manhattan Company.

The *Manhattan Company* in the city of New-York have not the power to take a *public street* or any part thereof, for the purpose of a reservoir to supply the city with water.

*It seems* they may occupy streets *temporarily,* whilst laying aqueducts,&c.

*It seems,* further, that the *discretion* of the company in appropriating private property subject to valuation and payment of damages, will not be controlled by the supreme court on a motion for the appointment of commissioners of estimate; if there be an *abuse of power,* the party aggrieved must seek his remedy otherwise.

*J. Slosson,* moved that the court appoint commissioners of estimate to value a certain part of *Cross-street,* in the city of New-York, which the Manhattan Company deemed necessary for the purpose of locating a reservoir, in order to supply the city with water, pursuant to their charter of April 2d, 1799.

The motion was opposed by *P. A. Cowdrey,* counsel for the corporation of the city, and by *W. S. Johnson,* in behalf of various persons claiming to own the fee of that part of Cross-street sought to be taken.

*By the Court,* Cowen, J. The counsel for the city corporation insists that the charter of the Manhattan Company does not authorize the taking of streets for the purpose con-

templated, and I think the motion must be denied on that ground. The company are authorized by their charter to enter into and upon, and freely to make use of any land which they shall deem necessary for the purpose of conducting a plentiful suply of pure and wholesome water to the city. They are to agree with the owner or owners of any mills, lands, tenements or hereditaments that may be damaged or affected by their operations, for and about a reasonable compensation, &c. for such mills, &c. or for any damage sustained in employing, diverting or obstructing any stream, or using any lands; or the cutting, laying, raising or making any reservoirs, aqueducts, canals, trenches, pipes, conduits, &c. and in case of disagreement, this court or a judge thereof is to appoint commissioners of estimate. It is entirely obvious that land may be obtained, and probably sufficient to answer all the purposes of the company, without permanently obstructing the streets of the city, or any part of them. The power of opening streets, and taking lands for that purpose, it is conceded, has existed in the city corporation, from a time long anterior to the passage of the act creating the Manhattan charter. It still exists. If the Manhattan Company have the power to take streets for reservoirs, the city have power to turn round and take the reservoirs for streets. Thus the two powers would destroy each other. But there is no need of placing them in conflict. They were both granted by different statutes or charters emanating from the same authority; and both should be so construed as not to interfere : at least not seriously. Both may stand together. There is room enough both for the streets of the city, and the reservoirs, wells and aqueducts of the Manhattan Company. And when one corporation has lawfully taken land for its own purposes, the other ought not to interfere with the easement thus acquired. It is not necessary to say, in the case at bar, that the Manhattan Company may not temporarily occupy the streets, as for the purpose of opening fountains or laying subterranean aqueducts, in such a way that the space in question may be kept open above for street purposes. But they seek to do more; to take the fee of the

Ex parte Manhattan Co.

land discharged of the street. It is not denied that, literally, their charter would authorize them to do so. On the other hand, the city charter, on a like literal construction, would authorize the city corporation to turn round and take back the land for a street. It results in an absurdity, which the legislature never could have intended. True, they have power to take corporate, as well as other property for public use, on making just compensation ; and if there were no other means of carrying the power of the Manhattan Company into effect, that circumstance would furnish an argument that the legislature intended they should take streets. The want of such means independently of the streets is, however, not pretended. Nay, more, the company appear to have an ample resource in private property ; even land of their own, contiguous to the premises in question, will furnish them with a place equal if not superior to the place claimed, for the improvement now contemplated.

It is not necessary to inquire whether the company are confined by their charter to the bringing of water from sources without the city. If such be the true construction of their charter, it certainly furnishes another objection to the granting of this application; for their purpose appears to be the supply of water from sources opened or to be opened within the city. The question may not be clear of doubt ; but it is of too grave a character to be decided without necessity.

Another objection is the alleged fact that, in no view, is there any necessity for the company taking this land, to obtain a supply of water, or attain any other purpose contemplated by their charter. It is therefore, surmised, that they want the premises for the purposes of private speculation. The legislature seem to have invested them with a discretion, nearly, if not quite absolute, as to the necessity of taking lands; at any rate, to have made them so far the judges in the matter that we cannot arrest them on this preliminary application ; perhaps in no form, except by a direct proceeding for the abuse of their powers. But here also is a question which need not now be decided.

Anon.

My opinion is, that the application should be denied, on the ground that their power does not extend to the occupation of a street in the city, or any part of a street, in such a way as permanently to obstruct it or impair its usefulness as a public way.

Motion denied.