Nov. Term,
1856.

KYLE
v.
MALIN.

---

## KYLE v. MALIN.

Section 17, of the charter of the town of *Vevay*, provided that "whenever the owners of lots on any street shall be desirous of making any improvements, &c., *two-thirds* of the owners of real estate on such street, and representing *two-thirds* of the whole number of *feet on each side* of such street, shall petition," &c. By a subsequent act the section was so amended as "to authorize such improvements to be made upon the petition of a *majority* of the owners of real estate on the street," &c.; but the amending act is silent as to the number of *feet*, &c. *Held*, that the amendment went directly to the number of *petitioners*, and did not affect the provision touching the number of *feet*.

Municipal corporations are to be held strictly within the limits prescribed by statute; but within these limits they are favored by the courts.

Powers expressly granted, or necessarily implied, are not to be defeated or impaired by a strict construction; but the acts authorized by a charter must be done in the manner prescribed by that instrument; and, especially where such acts affect private property, the powers granted must be strictly pursued.

*Monday,*
*November 24.*

APPEAL from the *Switzerland* Court of Common Pleas.

STUART, J.—Complaint by *Malin* against *Kyle*, treasurer and collector of the town of *Vevay*, praying an injunction restraining him from the collection of an assessment for the grading, &c., of *Washington* street. On the hearing, the injunction was made perpetual. *Kyle* appeals.

It appears that in *April*, 1853, some of the property holders on *Washington* street, *Vevay*, petitioned the trus-

tees to have that street graded and *McAdamized.* On petition, such action was had that the trustees ordered the improvement to be made, and let the work to one *Kincaid,* who entered upon it accordingly. In *October,* 1853, a supplemental petition was filed, reciting a mistake in the former petition, as to the recorded plat of *Vevay,* and asking further action by way of confirming what had been done. On this second petition, the trustees passed an order of confirmation, and that *Kincaid* proceed to complete the work. In the view we take of the case, it is not necessary to pass upon the validity of the second petition, further than it falls in incidentally.

The property of *Malin,* fronting on *Washington* street, was assessed about 42 dollars for the improvement, and *Kyle* had proceeded to levy, &c., on *Malin's* personal property to make the money. To enjoin the sale this suit is brought.

The ground of complaint is, that the trustees of *Vevay* have not proceeded in the premises agreeably to their charter; and that, having transcended the authority given by the charter, their acts are void.

By the act approved *January* 20th, 1846, the several acts relating to the town of *Vevay* were amended and reduced to one act. Local Laws, 1846, p. 337. The seventeenth section provides, that whenever the owner of lots on any street shall be desirous of making any improvements by grading, graveling, or paving the street, sidewalk, &c., two-thirds of the owners of real estate on such street, and representing two-thirds of the whole number of feet on each side of such street, shall petition for the contemplated improvement; and it shall be the duty of the corporation to cause the same to be done agreeably to the wish of the petitioners. The residue of the section provides for assessing and collecting the expenses of the improvement on the property affected thereby.

By a subsequent act, approved *January,* 1849, the seventeenth section above referred to was so amended as to authorize the corporation to cause the improve-

ments in that section contemplated to be made, upon the petition of a majority of the owners of real estate on the street to be improved, instead of two-thirds. Local Laws, 1849, p. 337.

It appears from the pleadings, and is conceded in argument, that on the second petition there was a majority of the property owners on *Washington* street, representing a majority of the whole number of feet, taking both sides of the street together, but not representing two-thirds, or even a majority of the whole number of feet on each side of the street.

The question is thus narrowed down to the single point, how far does the amendment of the seventeenth section in 1849, extend? Does it change the two-third rule both as to the number of petitioners and the number of feet to a majority of each collectively, or does it leave the two-third rule as to the number of feet on each side of the street unimpaired? Clearly the latter. The seventeenth section required the petition to be signed by two-thirds of those owning property on the street to be improved. The amendment of 1849 went directly to the number of petitioners, but not to the number of feet. It provided that the petition of a majority of the property owners should be sufficient to effect what it required two-thirds of them to do before. But the amendment was silent as to the number of feet. Hence, that provision was not affected by the amendment; nor was it affected by the subsequent repealing section. Local Laws, 1849, p. 337, s. 2. For the repeal is only of so much of the seventeenth section as requires petitions therein contemplated to be signed by two-thirds of the owners.

The law as amended, then, stands thus: "A majority of the property holders representing two-thirds of the number of feet on each side of the street, may petition," &c.

Something is said in argument about the rule of construction; and the twenty-third section of the act of 1846, incorporating *Vevay*, is relied upon. That section is, that the act shall be deemed a public act, and shall

be favorably construed for all beneficial purposes. But
whether that could be regarded as a favorable construction for any beneficial purpose, which should so construe the charter as to make it mean one thing, when it expressly says another, may be doubted. And whether this clause, found only in the act of 1846, could be applied to the amending act of 1849, may admit of question also. At best, it leaves it to the discretion of the Court to judge of the beneficial purposes to promote which the act should be favorably construed. Matters of mere detail might commend themselves to judicial discretion; but an attempt of the corporation to transcend its charter, would surely not be entitled to favor in the courts. Many obvious considerations, favorable to the application of the two-third rule to each side of the street, no doubt operated on the legislature in framing the charter. It does not seem to us that it could answer any beneficial purpose to relax that provision, even if we had the power.

The action of municipal corporations is to be held strictly within the limits prescribed by statute. Within these limits they are to be favored by the courts. Powers expressly granted, or necessarily implied, are not to be defeated or impaired by a stringent construction. *Smith* v. *The City of Madison*, 7 Ind. R. 86. But the acts authorized by the charter must be done in the manner which that instrument prescribes. *Rex* v. *The Mayor of Liverpool*, 4 Burr. 244. Particularly where the acts to be done more or less affect or impair, or encumber private property, as in the case at bar, the powers granted must be strictly pursued. Possessing, as these municipal corporations do, the power of assessment and sale of private property, often wielded by the indiscreet or the selfish, the grossest abuses would inevitably follow, if they were not held strictly within the powers granted and the means prescribed for the execution of these powers. *Sharp* v. *Johnson*, 4 Hill, 92.—*Lake* v. *The Trustees of Williamsburg*, 4 Denio, 520.—*Clark* v. *The Corporation of Washington*, 12 Wheat. 40. The

Nov. Term,
1856.

power to license auctioneers, &c., must be conferred by the legislature, and in executing it, the corporation must conform to the charter. *Fowle* v. *Common Council of Alexandria*, 3 Peters, 398.

In the case at bar, the order to grade *Washington* street, *Vevay*, should have been upon petition signed by a majority of the property owners, representing two-thirds of the number of feet on each side of the street. And because the petitioners did not represent two-thirds of the number of feet, the order to grade and *McAdamize* was unauthorized and void. All the proceedings which flowed from it must fall with it, the assessment and levy on *Malin's* property among the rest. The judgment of the Common Pleas, in making the injunction perpetual, was correct.

*Per Curiam.*—The judgment is affirmed with costs.

*J. Sullivan*, for the appellant.

*S. Carter*, for the appellee (1).

